IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | |
|---|---|
| LAVANCE MONTE TRAYLOR,<br><br>    Plaintiff,<br><br>    v.<br><br>WARDEN DANFORTH, et al.,<br><br>    Defendants. | CIVIL ACTION NO.: 6:19-cv-68 |

**REPORT AND RECOMMENDATION**

Before the Court is Defendants' Motion for Summary Judgment, filed on August 27, 2021. Doc. 21. Plaintiff filed a Response in which he ostensibly moved for summary judgment as well. Doc. 23. Defendants then filed a Reply. Doc. 24. For the following reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment, **DENY** Plaintiff's Motion for Summary Judgment, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Plaintiff *in forma pauperis* status on appeal.

**BACKGROUND**

**I.      Plaintiff's Allegations and Procedural History**

Plaintiff's claim arises from his transfer to, and his incarceration in, the Tier II Program at Georgia State Prison ("GSP") from April 2018 to October 2018.[1] Plaintiff alleges Valdosta State Prison, where he was incarcerated prior to GSP, performed an institutional shakedown on April 5, 2018. Doc. 1 at 6. He, along with several other prisoners, was then transferred to GSP.

---

[1]     Plaintiff is currently housed at Hays State Prison in Trion, Georgia.

Id.  Once at GSP, Plaintiff was placed on the Administrative Segregation Tier II Program without notice as to why he was being assigned there.  Id.  While on Tier II, Plaintiff alleges his cell was infested with ants and field mice.  Id.  He alleges he was bitten by ants as he tried to sleep and field mice would crawl over him.  Id. at 5–6.  Cockroaches were also a problem in the cell and they would crawl in Plaintiff's food.  Id. at 6.  Plaintiff further states the toilet had not been sanitized, causing a foul smell in the cell, and the tray flap in his cell door was rusty, causing rust bits to fall into his food.  Id.  Plaintiff attempted to appeal his placement, but his status remained the same until late August 2018, when he received documents stating he was being reassigned to Tier I segregation.  Id. at 8.  However, despite this notice, Plaintiff was kept on Tier II segregation until his transfer to Hays State Prison on October 31, 2018.  Id.

The Court completed a frivolity review of Plaintiff's Complaint and directed service of such on the Defendants.  Doc. 7.  The parties completed discovery, and Defendants filed this Motion on August 27, 2021.  Doc. 21.  Plaintiff opposes the Motion and requests summary judgment in his favor.  Doc. 23.  Defendants filed a Reply.  Doc. 24.  The Motion is now ripe for review.

## II.    Undisputed Material Facts

It is important to note at the outset that specific facts pled in a sworn complaint, like Plaintiff's Complaint, must be considered for the purposes of summary judgment.  Sconiers v. Lockhart, 946 F.3d 1256, 1262 (11th Cir. 2020); see also Burke v. Bowns, 653 F. App'x 683, 695 (11th Cir. 2016) ("We also credit the specific facts pled in [a plaintiff's] sworn complaint when considering his opposition to summary judgment.") (quoting Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1098 (11th Cir. 2014)).  Defendants submitted a Statement of Material Facts ("Defendants' SMF") in support of their Motion for Summary Judgment, in accordance

with the Federal Rule of Civil Procedure 56 and Local Rule 56.1. Doc. 21-3. Defendants' SMF is supported by Plaintiff's deposition, doc. 21-1, and the declaration of Director Shepard with attachments, doc. 21-2. Plaintiff has not responded to Defendants' SMF, nor has he provided his own Statement of Material Facts. However, Plaintiff has stated his opposition to the motion, and "all justifiable inferences are to be drawn" in favor of the nonmovant. Shaw v. City of Selma, 884 F.3d 1093, 1098 (11th Cir. 2018) (internal quotations omitted) (quoting Tolan v. Cotton, 572 U.S. 651 (2014)). Thus, the Court identifies the following undisputed, material facts for the purposes of evaluating Defendants' Motion for Summary Judgment:

Plaintiff is currently housed at Hays State Prison, though this current lawsuit only concerns his transfer to and time at GSP in 2018. Doc. 21-3 at 1. Plaintiff's claim concerns his placement in the Tier II administrative segregation program at GSP, which he says violated his right to due process. Id. The Tier II program is not punitive in nature but is meant to protect staff and offenders from those who pose a serious threat to the safety of the prison. Id. at 2. Tier II cells are essentially identical to those in general population, with the same standards of light, heat, ventilation, and cleanliness. Id. at 3. The program has phases, from most to least restrictive, and each phase provides an inmate progressively more privileges. Id. Movement between phases is based on the offender meeting or failing to meet behavioral expectations and goals outlined in the offender's individual case plan. Id. Once an inmate completes all phases of the program, he is eligible for a new housing assignment, up to and including a return to general population. Id.

An inmate may be assigned to the Tier II program for many reasons, including if the inmate is a threat to the safe and secure operation of the facility or if he has had three or more disciplinary charges of either "Great" or "High" severity level within the previous 12 months.

3

Id. All decisions about an inmate's progression are made at the facility level by the facility's Classification Committee ("CC"). Id. at 2. A CC recommendation, approved by the warden, places an inmate in the Tier II program and the same process moves the inmate to a different phase of the program or reintroduces the inmate to general population. Id. at 2, 4. If the CC recommends assignment to Tier II and the warden approves, the inmate is provided written notification of the assignment. Id. at 4. The CC conducts regular 90-day reviews of the inmates assigned to Tier II. Id. at 2, 4. For 90-day reviews, the CC generates a recommendation and provides the recommendation to the warden. If the recommendation is approved, the inmate is given a copy of the recommended action. Id. at 4. An appeals process exists at all stages of the Tier II program. Id. at 4–5.

Plaintiff was housed at Valdosta State Prison from 2012 until April 2018. Id. at 5. In April 2018, officials at Valdosta State Prison conducted a "shakedown" of the entire facility. Id. During the search, officials found a knife in Plaintiff's cell, though Plaintiff claimed it belonged to his cellmate.[2] Id. Plaintiff and several other inmates were transferred to GSP. Id. Upon his arrival, Plaintiff was placed in the Tier II program. Id. A Tier II initial segregation hearing was held in which the CC recommended Plaintiff be assigned to Phase I and the Warden approved the recommendation.[3] Id. at 5–6. Plaintiff was notified in writing of the decision and provided with an appeal form, which he used to appeal his placement on April 12, 2018. Id. at 6.

---

[2] Plaintiff was later found not guilty of the knife possession disciplinary charge after he was transferred to GSP. Doc. 21-3 at 5.

[3] The parties did not provide any documentation of the CC's initial placement recommendation or the Warden's approval. A later document indicates Plaintiff was assigned to Tier II because Plaintiff received three disciplinary infractions in the preceding 12 months and because Plaintiff was "noted as threat to the safe and secure operations of the facility for involvement in the unrest of the population due to his introduction of drugs into the facility." Doc. 21-2 at 46. Presumably, all of this refers to conduct that occurred at Valdosta State Prison prior to the transfer. It is not clear from the record whether Plaintiff was given this explanation at the time of his initial assignment.

For Plaintiff's 90-day review in May 2018, the CC recommended, and the Warden approved, Plaintiff be moved to a less restrictive Tier II phase.[4] Id. Plaintiff appealed this decision on June 14, 2018. Id. While in Tier II, Plaintiff received the meals, showers, and exercise to which he was entitled during this phase of his Tier II assignment. Id. However, Plaintiff states the sanitation of the cell was below livable standards: the cell was infested with ants, field mice, and cockroaches; his food was tainted with rust from the tray flap; and the toilet was foul smelling since it had not been cleaned in some time. Doc. 1 at 6–7. Plaintiff further stated he complained to the unit manager about these issues "100s of times" but his complaints were disregarded.[5] Id. at 7.

Plaintiff received a second 90-day review on June 19, 2018, in which he was moved to the next less restrictive phase and he appealed this decision. Id. Plaintiff received one more 90-day review while living in Tier II at GSP, in which the CC recommended he remain in the same Tier II phase. Id. On August 30, 2018, he was moved to a different dorm for mental health reasons. Id. at 7. In October 2018, Plaintiff was transferred to Hays State Prison. Id. Plaintiff does not dispute this timeline. See Doc. 1 at 7–8.

---

[4] The Court notes Plaintiff's "90-day" reviews seemed to occur almost every month. In Plaintiff's deposition, he said the reviews happened every 30 days and he believed the frequency was due to overcrowding. Doc. 21-1 at 56. The affidavit of Michael Shepard, the Southeast Regional Director for the Georgia Department of Corrections, indicates some discretion to perform reviews earlier, as he states the CC "is charged with reviewing the inmate's status in the Tier II program at least every 90 days." Doc. 21-2 at 4.

[5] Defendants dispute Plaintiff's account and state Plaintiff received the sanitation to which he was entitled, pointing to Tier II program checklist from the week of June 17, 2018. Doc. 21-3 at 6. Through his sworn Complaint and deposition, Plaintiff indicates the sanitation problems persisted throughout his time in Tier II. Doc. 1 at 6–7; Doc. 21-1 at 58. As the nonmovant, all inferences are to be drawn in the Plaintiff's favor. Shaw, 884 F.3d at 1098.

## LEGAL STANDARD

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)). "If the evidence [produced by the nonmoving party] is merely colorable or is not significantly probative summary judgment must be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 at 249 (1986) (citations omitted).

The moving party bears the burden of establishing there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences which can be drawn from the record in a light most favorable to the nonmoving party.

Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011).

## DISCUSSION

Defendants argue they are entitled to summary judgment because Plaintiff's conditions of confinement did not rise to an "atypical and significant hardship" relative to other prisoners to trigger the Fourteenth Amendment due process clause.  Doc. 21 at 2.  They argue even if the due process clause were implicated, Plaintiff received adequate process while assigned to Tier II at GSP.[6]  Id.  Plaintiff does not directly address these arguments in his Response, but instead reasserts his initial allegations from his sworn Complaint.  Doc. 23.

**I.  Plaintiff's Due Process Claim**[7]

**A.  Legal Standard**

For a successful § 1983 claim, a plaintiff must demonstrate the defendant deprived him of a right secured under the Constitution or federal law and such a deprivation occurred under color of state law.  Smith v. Deemer, 641 F. App'x 865, 866 (11th Cir. 2016).  Plaintiff argues his right to due process was violated when he was placed in the Tier II assignment without proper notification and in unlivable conditions.  Doc. 23 at 10, 6.  The Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  "The Supreme Court has made it clear that the Due Process Clause does not

---

[6] Defendants also argue, if the Court finds there has been a constitutional violation, they are entitled to qualified immunity, they cannot be held liable as supervisory defendants in this case, and compensatory damages for the remaining constitutional violations are barred by the Prison Litigation Reform Act of 1995 ("PLRA").  Doc. 21 at 10, 11, 13.  Given the determination on the alleged violation of his constitutional rights in § I.B, the Court does not need to resolve the issue of qualified immunity or Defendants' other arguments.  Taylor v. Hughes, 920 F.3d 729, 732 (11th Cir. 2019) (stating a plaintiff must be able to show "relevant facts . . . set forth a violation of a constitutional right" in addition to a clearly established constitutional right).

[7] Plaintiff asserts only one claim in this action, though he asserts it against several Defendants: violation of his procedural due process rights under § 1983.

directly protect an inmate from changes in the conditions of his confinement, as long as the condition to which the prisoner is subjected is not otherwise violative of the Constitution." Chandler v. Baird, 926 F.2d 1057, 1060 (11th Cir. 1991) (citations omitted). An inmate validly claims a violation of a protected liberty interest where he identifies "state actions that unexpectedly alter his term of imprisonment or impose an atypical and significant hardship to ordinary prison life." Smith, 641 F. App'x at 867 (quoting Sandin v. Conner, 515 U.S. 472, 483 (1995)).

Revocation of good-time credit is an example of an action unexpectedly altering an inmate's term of imprisonment. Wolff v. McDonnell, 418 U.S. 539, 555–56 (1974). An atypical and significant hardship exists when the confinement presents a dramatic departure from the ordinary conditions of prison life. Sandin, 515 U.S. at 485–86. However, the Due Process Clause is not seen as protecting every change in confinement that has a substantial adverse impact on the prisoner. Id. at 478. Atypical and significant hardships generally "must exist for a significant period of time." Smith, 641 F. App'x at 868 (citing cases where 30 and 60 days of administrative confinement was held to be not atypical, but 500 days and one year solitary confinement did meet the atypical and significant hardship standard). The hardships must also be severe relative to regular prison. Id. "Confinement in administrative segregation does not impose an atypical and significant hardship on a prisoner if the conditions of his confinement mirror the general prison population conditions." Jackson v. Brewton, 595 F. App'x 939, 942 (11th Cir. 2014).

If a liberty interest is established, the question then becomes what process the inmate is due. Wilkinson v. Austin, 545 U.S. 209, 224 (2005). The Court must consider three distinct factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an

erroneous deprivation of such interest through the procedures used and the probably value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal administrative burdens that the additional or substitute procedural requirement would entail." Matthews v. Eldridge, 424 U.S. 319, 225 (1976). For assignment to administrative segregation, courts have held a prisoner must initially "receive some notice of the charges against him and an opportunity to present his views, whether at a hearing or in writing." Quintanilla v. Bryson, 730 F. App'x 738, 744 (11th Cir. 2018) (quoting Hewitt v. Helms, 459 U.S. 460, 476 (1983)). An informal, non-adversarial evidentiary review is sufficient "both for the decision that an inmate represents a security threat and the decision to confine an inmate to administrative segregation pending completion of an investigation into misconduct charges against him." Gandy v. Gramiak, No. 5:16-cv-44, 2019 WL 1085189 at *5 (S.D. Ga Mar. 7, 2019) (citing Hewitt, 459 U.S. at 476). Prisoners who remain in administrative segregation must receive some periodic review of confinement. Hale v. Sec'y for Dep't of Corr., 345 F. App'x 489, 493 (11th Cir. 2009). Those periodic reviews do not require "prison officials permit the submission of any additional evidence or statements" but they can make decisions based on "facts relating to a particular prisoner, their general knowledge of prison conditions and tensions, and other administrative considerations. Gandy, 2019 WL 1085189 at *5 (citing Hewitt, 459 U.S. at 477, 477 n.9).

**B.    Discussion**

Defendants argue Plaintiff did not have an interest protected by the Due Process Clause in avoiding assignment to the Tier II Program and, even if he did, Plaintiff was not denied adequate process. Doc. 21 at 9–10. Plaintiff argues the conditions in which he was held while in the Tier II program created a protected liberty interest because cell conditions in the program were unlivable. Doc. 23 at 6. Furthermore, Plaintiff argues the process to assign him to Tier II

9

"was like [a] fast-track" and he did not receive process necessary to protect his interest in remaining in general population. Id. at 10.

Plaintiff does not argue his assignment to Tier II has increased his sentence, but instead, focuses on arguing it caused him an atypical and significant hardship. In Plaintiff's sworn complaint, he states his Tier II cell was infested with ants and field mice. Doc. 1 at 6. He further states he was nauseated from the smell of the toilet in the cell which had not been sanitized for some time, which prevented him from eating. Id. at 7. His food became contaminated by cockroaches and rust from the tray flap. Id. However, even considering these allegations in the light most favorable to Plaintiff, Plaintiff has failed to demonstrate his confinement in Tier II was severe or atypical relative to conditions in general population. See Sandin, 515 U.S. at 486 (holding no protected liberty interest where disciplinary segregation mirrored conditions imposed on inmates in other areas of the prison).

Plaintiff makes sworn allegations about unsanitary conditions and insists the cells were filthy, doc. 21-1 at 58, but fails to show the conditions were any harsher than conditions in general population in the prison. In contrast, as support for their Motion, Defendants offered the affidavit of Michael Shepard, the Southeast Regional Director of the Georgia Department of Corrections, who states the Tier II cells are "essentially identical to those in general population." Doc. 21-2 at 3; see Maddox v. Owens, Civil Action No. 5:15-cv-36, 2018 WL 1513671, at *8 (M.D. Ga. Mar. 27, 2018) ("Placement in administrative segregation does not implicate liberty interests under the due process clause when this confinement has occurred under conditions substantially similar to those experienced by the general population.") (quoting Al-Amin v. Donald, 165 F. App'x 733, 738–39 (11th Cir. 2006)). While Plaintiff's allegations about the conditions in Tier II describe unpleasant and disturbing circumstances, Plaintiff fails to show any

difference in conditions in Tier II compared to ordinary prison life. Ultimately, because Plaintiff has not shown a difference between Tier II and general population conditions, he is not able to demonstrate an atypical and significant hardship.

Plaintiff emphasizes he was kept on Tier II for 210 days. Doc. 1 at 8. Courts have recognized the duration of assignment to segregation in a prison may be relevant to determining whether an atypical and significant hardship exists. See, e.g., Magluta v. Samples, 375 F.3d 1269, 1282 (11th Cir. 2004). However, Plaintiff has not shown he was in Tier II at GSP for such a lengthy period of time it would warrant a finding of atypical and significant hardship. Plaintiff was in various phases of Tier II segregation for a total period of approximately seven months. This is significantly less than the 500 days of solitary confinement considered in Magluta, 375 F.3d at 1282 (11th Cir. 2004), and the year of confinement considered in Williams v. Fountain, 77 F.3d 372, 374 n.3 (11th Cir. 1996). Additionally, Plaintiff was regularly being moved through the Tier II program into less restrictive phases, so he was not being kept in segregation indefinitely unlike the disputed placement in the Supermax prison in Wilkinson v. Austin, 545 U.S. 209, 223 (2005). Since there is no genuine dispute about whether the conditions in general population and Tier II are substantially similar, Plaintiff did not face an atypical and severe hardship. Therefore, Plaintiff does not have a protected liberty interest in remaining in general population.

However, even if Plaintiff did have a protected liberty interest, the record shows Plaintiff received appropriate due process in his assignment to Tier II. An initial segregation hearing was held for Plaintiff after he arrived at GSP in April 2018. Doc. 21-2 at 5. Plaintiff says in his sworn Complaint he was placed in Tier II "without any disciplinary actions or sanctions." Doc. 1 at 6. However, Defendants have provided evidence which blatantly contradicts this

11

allegation, such as Plaintiff's previous disciplinary reports which were the basis for his placement on Tier II when he was transferred to GSP. Doc. 21-2 at 41–45; see Feliciano v. City of Miami Beach, 707 F.3d 1244, 1253 (11th Cir. 2013) ("As a general principle, a plaintiff's testimony cannot be discounted on summary judgment unless it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law, meaning that it relates to facts that could not have possibly been observed or events that are contrary to the laws of nature."). Plaintiff was notified of the CC's recommendation he be placed on Tier II and the Warden's approval and was provided with an appeal form so he could have the opportunity to present his thoughts on his assignment. Id.; see Quintanilla, 730 F. App'x at 744 (stating a prisoner must initially "receive some notice of the charges against him and an opportunity to present his views, whether at a hearing or in writing") (quoting Hewitt, 459 U.S. at 476). Indeed, Plaintiff did appeal his initial placement. The record makes plain Plaintiff utilized the available appeals process at every available opportunity, showing he received his opportunity to be heard in this process. See Doc. 21-1 at 38 ("Q: [Y]ou said that you got the appeal papers for every time and you appealed them every time to the warden and every time the warden denied your appeals about the tier two program. Is that correct? A: Yes sir, that's correct."). Additionally, the record also shows regular reviews, often only 30 days between each review (more frequently than required by the Tier II policy), up to the point Plaintiff was transferred to the mental health dorm at GSP. Doc. 21-2 at 6; see Hale, 345 F. App'x at 493 (noting prisoners in administrative segregation must receive periodic review of their confinement). No dispute exists: Plaintiff received all appropriate due process when he was assigned to and kept in GSP's Tier II program. For this reason, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment.

## II.     Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has, of course, not yet filed a notice of appeal, it is proper to address these issues in the Court's order of dismissal. See Fed. R. App. P. 24(a)(3) (trial court may certify an appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact." Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 4:07-cv-085, 40:3-cr-001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Defendants' Motion for Summary Judgment, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

**CONCLUSION**

For the foregoing reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment, **DENY** Plaintiff's Motion for Summary Judgment, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Plaintiff *in forma pauperis* status on appeal.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection the Magistrate Judge failed to address a contention raised in the Complaint must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final

judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 1st day of February, 2022.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA